SAMUEL KERR, Administrator, &c. v. HENRY LAIRD et al.

It is a well-settled principle of law, that a trustee who mingles money received by him as trustee with his own funds, and makes use of it, is liable for interest.

The mere readiness of a trustee in such a case to pay over trust funds in his possession, will not exempt him from liability for interest, unless he kept the trust money set apart as trust funds, and has it ready at all times to be paid to the parties entitled to it.

In such a case, it is not necessary to make a demand of the money before the trustee is liable for interest on such funds in his possession. *Held*, that where the use of the money is the ground of his liability, no demand is necessary.

ON appeal from the northern chancery court at Holly Springs; Hon. Henry Dickinson, vice-chancellor.

On the 30th of August, 1836, Andrew Kerr, Joseph W. Matthews, P. F. Armistead, John Chisholm, Volney Peel, and Samuel McCorkle, entered into articles of association and agreement, for the purpose of laying out and establishing the town of Belmont, in Panola county, upon a tract of land of which they were the owners.

The proprietors made the land a joint-stock fund, estimating it at $17,000, which was divided into 340 shares, of $50 each, for which scrip or certificates of stock were issued and divided among the proprietors in proportion to the amount of their respective interests in the land.

To manage the affairs of the association, which was styled "The Belmont Town Company," five trustees were appointed, being Peter F. Armistead, Samuel McCorkle, Volney Peel, Henry Laird, and John Chisholm. They were to appoint one of their number as treasurer of the company; and the powers and duties of the trustees and treasurer were defined and prescribed by the articles of association. Henry Laird was appointed as treasurer, and gave a bond as such, conditioned for the faithful discharge of his duties.

The trustees proceeded to lay off lots upon the site of the contemplated town, and to sell them. The certificates of stock

issued to the original proprietors of the land were transferable at the will of the holders, and many of them found their way into other hands. At the several lot sales, considerable purchases were made by most of the stockholders; but Andrew Kerr, who owned one fourth of the stock, purchased none of the lots.

Armistead, one of the five trustees, soon ceased to act, and J. G. Chisholm was elected as a trustee in his stead. Three of the trustees, Volney Peel, James G. Chisholm, and John Chisholm, have been dead for some years. McCorkle, the fourth trustee, died since the filing of the bill, and Laird is the sole survivor; none of the vacancies occasioned by the death of the other trustees having been filled. The original bill was filed in April, 1850.

The business of the company was almost exclusively managed by Laird, who seems to have been very little aided or directed by the other trustees; and it does not appear that the stockholders ever had a meeting after the date of the articles of association.

The object of Kerr in filing his bill was, to have the affairs of the company wound up and obtain the dividend due upon his stock. He died soon after the bill was filed, and the suit was revived in the name of his administrator. Henry Laird, Samuel McCorkle, Peter F. Armistead, Joseph W. Matthews, John B. Fant, executor of Volney Peel, and Pugh Houston, executor of John Chisholm, were made defendants to the bill. McCorkle died without answering, and Charles G. Nelms, as his administrator, has answered the bill, as have the other defendants, except Armistead.

The bill charges, " that the said Henry Laird was appointed treasurer of the said association, and the various collections that have been made on account thereof, have all passed into his hands; and for years past the said Laird, as your orator believes, has been using for his own purposes the funds of said association."

And further, " that the said Laird is responsible for interest for large sums of money which he collected in the premises years ago, and has continued up to this time to hold."

46 *

The vice-chancellor rendered a decree exempting Laird from the payment of interest, and the appellants prayed this appeal.

*Mays, Watson,* and *Craft* for appellant.

The question here to be decided is, Who shall gain? Shall the defendant, who received the interest for the use of the complainant's money, pay that interest to him whose capital produced it, or shall he retain it to himself? And it is conceived that there is no maxim in equity better established than that which declares " that he who receives a benefit by the use of that which belongs to another, shall make to that other compensation." On the subject of interest, see 9 Pick. 368; 9 Johns. 71; 6 Halst. 145, and cases cited; 9 S. & M. 642; 10 Yerg. 160; 1 Wash. 145; 4 Hen. & Munf. 259; 3 Rand. 434. A trustee holding a fund and using the money, must pay interest. 5 Mason, 332. It was the duty of the defendant when sued, to tender the money in court; not having done so, he must pay interest. 3 J. J. Marsh. 68; 7 Dana, 201. An agent who has long held the funds of his principal shall pay interest. 5 Dana, 469. A trustee who mingles the trust money with his own and uses it, is chargeable with interest. 6 Johns. Ch. R. 17, 452; 2 Ib. 108; Hopk. 424. If a trustee suffer money to lie idle, he shall only pay simple interest, but if he use it for his own advantage, he shall pay compound interest. 1 Johns. Ch. R. 620; 1 McCord's Ch. R. 399; 4 Hen. & Munf. 416. A trustee can in no event be a gainer by the employment of the trust fund. 4 Johns. Ch. R. 305. Whoever uses the money of another must pay interest. 4 Dana, 398. It is natural justice, that he who has the use of another's money should pay interest for it. 2 Call, 106.

There is but one question in this case, and that would appear to be of easy solution. Laird, the defendant, was a trustee and treasurer of a town lot company. There came to his hands money and property of the company, which for many years he used as his own, and the only question is, when called before the chancellor to account, Shall he be charged with interest? For all his services he received compensation. He had for many years the possession and use of the complainant's

Kerr *v.* Laird et al.

money; he does not question but that he derived benefit from this use, and mainly places his opposition to paying interest, upon the ground that he had received depreciated money, which would have been lost had he not used it. Now in the first place, he has not shown that he did receive such money; in the second place, if he did receive it, he had no right to do so; and in the third place, having derived a benefit from the use of the complainant's money, upon the plainest principles of natural justice, he should make compensation for the benefit he has thus received. I am not disposed to place the complainant's right upon the ground of a culpable wrong done by the defendant; the defendant's wrong can only with propriety render him liable.

*Stearns, Harris,* and *Glenn* for appellee.

Interest, where there is no express contract for its payment, is never due *ex debitis justitiæ.* It is the creature of equity and of fair dealing. A simple receipt of money does not, "as a matter of law, compel a man to pay interest upon it. His liability is to be ascertained from extrinsic facts and circumstances. There may be cases in which the defendant ought to refund the principal merely; and there may be other cases in which he ought, *ex æquo et bono,* to refund the principal and the interest. Each case must depend upon the justice and equity arising out of its peculiar circumstances." *Bell* v. *Logan,* 7 J. J. Marsh. 594; 3 Caines, 266.

Neglect, or violation of duty on the part of holders of money, seems to have been the general and pervading principle upon which the cases, in directing the payment of interest, have proceeded. Such is the character of the following cases:—

" There may be cases where interest ought not to be allowed; as where the defendant has holden the money as a stakeholder, ready to be paid to the party entitled." *Wood* v. *Robbins,* 11 Mass. 506.

" Interest is refused, generally, against a garnishee." 2 Dallas, 215.

" A bailee, without demand or default, is not bound to pay

interest." *Johnson* v. *Haggin*, 6 J. J. Marsh. 681. See, also, *Dodge* v. *Perkins*, 9 Pick. 386–389.

" A judgment debtor attached, disclosing the judgment as effects of the creditor, is not bound to pay interest, because he has not unjustly detained the money." 4 Mass. 171, and cases there cited.

" If money is paid to a man by mistake, and he is guilty of no fraud or surprise, he shall not pay interest." 1 Dallas, 52.

" Interest is only allowed from the time of a demand." 7 Pick. 261.

What we apprehend to be the true and most equitable general rule on this subject is thus laid down by the court in *Dodge* v. *Perkins*, 9 Pick. 386, after reviewing a vast number of adjudged cases : " The great inquiry upon a claim of interest is, whether the party has done all that the law required of him in the particular case ; whether acting on his own account, or as agent, executor, administrator, guardian, or trustee for others. If he has, he is not accountable for interest. If he has not, he is accountable for it, as a compensation for non-performance of his duty."

The cases cited by us upon the question of the liability of Laird for retaining the money, are equally applicable, we think, to the question of his liability for using it; and we again refer the court to those authorities.

In *Branthwait* v. *Halsey*, 4 Halst. 3, it was decided, that " a party may use funds, which, by the act of the law or of the creditor, he is not allowed to pay over, without rendering himself liable for interest."

In *The Oriental Bank* v. *The Tremont Insurance Co.*, 4 Met. 1, the fund in controversy was mixed with their own and used by the defendants during the pendency of a trustee process, and yet it was held that " the defendants might avail themselves of the fact that they had not violated their contract by wrongfully or unreasonably detaining the plaintiff's money, and so were not chargeable with interest."

In *Lee* v. *Mun*, 8 Taunt. 45, it was held, that " if a party were a stakeholder without fault, he would not be chargeable

with interest, though the money were in his hands for several years."

In *Hubbard* v. *Charlestown Branch Railroad Co.*, 11 Met. 128, it was held, that "in general, when one has the money of another, having been guilty of no wrong in obtaining it, and no default in retaining it, interest is not chargeable."

In *Giles* v. *Hall*, 2 P. Wms. 378, it was held, that after a tender had been made in order to stop interest upon a mortgage, the mortgagor would be relieved from the payment of interest, if he kept the money always ready to be paid over, as Dr. Laird swears that he did in this case.

Upon the oral argument of this cause in the court below, the following authorities were cited and relied on by our opponents: *Smith* v. *Hurd*, 8 S. & M. 682; *Hunter's Ex'rs* v. *Spotswood*, 1 Wash. 145; *Tazewell's Ex'rs* v. *Barrett & Co.*, 4 H. & M. 259; *Templeman* v. *Fauntleroy*, 3 Rand. 434.

Mr. Justice HANDY delivered the opinion of the court.

This was a bill in chancery filed by the appellant against the appellees for an account of a joint-stock concern, consisting of a parcel of land laid out for a town, in which all the parties were interested.

It appears that the company was composed of six stockholders, of whom the appellant's intestate was one, who entered into articles of agreement in the year 1836 in relation to the enterprise, under which the management of the affairs of the concern was intrusted to four of their number, of whom the appellant's intestate was not one, and the appellee Laird, who were appointed trustees for the company; and in virtue of the provisions of the articles, Laird was also appointed by the trustees their agent or treasurer, and was to receive a compensation for attending to the business, a commission of five per cent. on all moneys received by him. A majority of the trustees was required to act, in order to bind the company or transact the business intrusted to them; and they were required at least once a year to make dividends of moneys received, and in case of failure to do so, they were to be liable to an action by each member entitled for the recovery of his dividend. No dividend

was made to the appellant's intestate, and it appears that Laird collected for the company $28,254.48, but no dividend could be made or paid over, because of the death of a majority of the trustees. Hence it became necessary to file the bill, in order to justify the appellee in settling with the stockholders the dividends respectively due them. The account of the amount of money received by him is satisfactory, and is not contested; but the point of controversy is whether Laird should be charged with interest upon the moneys received by him as agent for the company; and this depends upon the circumstances of the case.

The bill alleges, that for several years Laird had used for his own purposes the funds of the company which he had collected, and that he is responsible for interest thereon. The answer admits that he has used the most of the identical money received by him, " yet he has always held himself in readiness to pay the full amount due by him;" that by using the funds collected, he has saved a large amount which would otherwise have been lost, as a portion of the collections were in uncurrent money, which would have been worthless if it had been kept on hand; that in making collections, he frequently took notes from the debtors of the company on other persons, upon which he was compelled to take property, &c., in order to save the debts which otherwise would have been lost; and hence he submits that he is not chargeable with interest. He also insists that he is not liable for interest, 1st, because no demand was made of him by the appellant or his intestate; and 2d, that as treasurer, he was only liable to pay the dividends declared by the trustees, and that no dividends were ever declared by them which were to be paid over.

The report of the commissioner to whom the matter of account was referred, having charged Laird with interest, exceptions were taken by him thereto, and the same were sustained by the vice-chancellor. And hence the question is brought to this court.

The sole question submitted for our decision is, whether the agent is liable or not for interest on the moneys collected by him.

No principle of law is more firmly settled than that a trustee who mingles money received by him as a trustee with his own funds, and makes use of it, is liable for interest. This is not denied as a general rule by the appellee; but it is insisted that there is no such liability under the circumstances of this case, because the use he made of the money was beneficial to the company. Let us examine this point as the facts are presented in the record.

The bill charges that Laird made use of the funds of the company for his own purposes. This is admitted by the answer, and then it proceeds to state the reasons why the funds were used, which are that collections were made in many cases in uncurrent money, which would have been lost by depreciation had it been kept on hand, and in other cases by taking property in discharge of claims due the company, which otherwise would have been lost. It is to be observed that there is no proof of the facts stated as a justification for the use of the money. The statements of the answer in that respect are not responsive to the bill, and therefore cannot be regarded as evidence. And whatever weight the circumstances therein stated could, if proved, have, as justifying the appellee in using the money, there is nothing to exempt him from liability as the case is presented. After admitting the use of the funds, the answer goes on to state that he " has always held himself in readiness to pay the full amount due by him to the company." This may be true, and still he would be liable for interest. The ground upon which he is responsible for interest, is the appropriation of the trust funds to his own use, and the legal presumption arising therefrom that he made a profit by it; and though he may have been ready to pay at all times, this would not absolve him from his liability for the use of the money; for he might have had other resources from which he could have made payment. His mere readiness to pay could not exempt him from liability unless he kept the money set apart as trust funds, and ready at all times to be paid to the parties entitled to it; for otherwise, any trustee, having great resources at command, might employ trust money in his hands to his own profit and not be liable for interest, because he was ready at all times

whenever required to pay the amount out of other means within his power, but of which he would not avail himself unless required to pay the trust money.

But it is contended that Laird, as treasurer of the company, was only bound to pay the dividends declared by the trustees, and that none were ever declared, and that he is, therefore, not responsible for interest. This objection would equally discharge him for the principal and interest, which is not contended for; but it is untenable as to either. The bill is filed for an account and settlement of the affairs of the company in the hands of the treasurer, the board of trustees being dissolved by the death of a majority of them. The treasurer was the agent not only of the trustees, as is contended, but of the stockholders to whom he is accountable upon the dissolution of the board of trustees. As such he is accountable to the stockholders for the moneys received by him, and if he is chargeable with interest he is also responsible to them for that in like manner as he is responsible for the principal; and upon such an accounting, it is wholly immaterial whether dividends were declared by the board of trustees or not. His responsibility arises from his having in his hands as an individual, funds belonging to the company, for which as well as the use of them he is liable to the *cestuis que trust.*

Nor is there any force in the objection that he was liable only upon demand. It is admitted that he made use of the trust money, and that is the ground of his liability for interest. The object of a demand would be to place him in default on refusing payment; but when the use of the money is the ground of his liability, no demand is necessary, as he would be liable for interest in such case whether he paid the money on demand or not.

The order of the vice-chancellor allowing the exceptions of the appellee. Laird to the commissioner's report, charging him with interest, is reversed, the exceptions overruled, and the report confirmed as to Laird.