Matthewson v. Davis.

---

## Rollin Matthewson, Executor, etc., et al., v. George P. Davis and Clifton H. Moore, Executors, etc.

91   153
r191  ³391

1. WAIVER—*Of the Objection that the Remedy is at Law.*—When the defendant in a chancery proceeding makes an offer in his answer to submit the controversy to the court for trial, afterward stipulates as to the facts involved, submits evidence to the court and procures a decree in accordance with his offer, all objections to the jurisdiction of the court on account of the remedy being at law, instead of in chancery, is waived.

2. TRUSTEES—*Not to Deal with the Trust Funds on Their Own Account.*—The rule that trustees and others standing in a fiduciary and confidential relation will not be permitted to deal on their own account with the person or thing falling within the trust relationship, is one of wide application in equity, and one the enforcement of which courts of equity uniformly require.

3. INTEREST—*When to be Allowed on Trust Funds.*—Trustees must abstain from dealing on their own account with the trust fund, or from

making profit out of it for themselves; and if they do so, they must account for such profits if they can be ascertained; if not, then with interest upon the fund used; and if they fail to keep an account while using it, in the absence of proof to the contrary, it will be presumed that annual interest on the sum used, at least, has been made, which ought to go to the *cestui que trust*.

**Bill for an Accounting.**—Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1900. Reversed and remanded with directions. Opinion filed September 11, 1900.

RALPH F. POTTER, attorney for appellants; MILES K. YOUNG, of counsel.

The general principle of equity is that trustees and others sustaining a fiduciary and confidential relation, can not deal on their own account with the thing or the person falling within that trust relationship. And it avails nothing that the intentions of the trustee are honest. Thorp v. McCullum, 1 Gilm. 625; Dennis v. McCagg, 32 Ill. 445; Miles v. Wheeler, 43 Ill. 126; Michoud v. Girod, 4 How. 503.

A trustee or other fiduciary must not mingle trust funds with his own and is prohibited from gaining any advantage to himself from the use of the fund. 2 Pomeroy's Eq. Jur., Sec. 1076, 1077; 1 Perry on Trusts, Sec. 447, 454; Seymour v. Freer, 8 Wal. 218.

If a trustee mingles trust money with his own, or uses it in his private business, or deposits it in bank in his own name, he will be liable to pay simple interest at the rate established by law as the legal rate. 1 Perry on Trusts, Sec. 468; Lehmann v. Rothbarth, 111 Ill. 200; Whitney v. Peddicord, 63 Ill. 249; Cool v. Jackman, 13 Ill. App. 560; Sholty v. Sholty, 140 Ill. 81; Utica Ins. Co. v. Lynch, 11 Paige, 524; Manning v. Manning, 1 Johns. Ch. 527: Dunscomb v. Dunscomb, 1 Johns. Ch. 508.

In the absence of a showing as to the amount of profits the beneficiary may elect to take interest in lieu thereof, and the burden of proof is on the trustee to show that he made no profits or received no benefits from the money, and if he refuses to account or show the amount of profits

received, the court will give compound interest, in order that it may be certain that the *cestui que trust* gets the profits from the trade or business in which the trustee has employed the money. 1 Perry on Trusts, Sec. 471; Ogden v. Larrabee, 57 Ill. 398; Hurd v. Goodrich, 59 Ill. 450; Asay v. Allen, 124 Ill. 398; White v. Sherman, 168 Ill. 604; Hough v. Harvey, 71 Ill. 72; Rowan v. Kirkpatrick, 14 Ill. 1; Bond v. Lockwood, 33 Ill. 212.

If a defendant in a suit in equity answers and submits to the jurisdiction of the court, it is too late thereafter for him to object that the plaintiff has an adequate remedy at law. 1 Daniell's Ch. Pr., 3d Ed., 574 note, 6th Ed., 550, n. 3; Stout v. Cook, 41 Ill. 447; Gage v. Griffin, 103 Ill. 44; Crawford v. Schmitz, 139 Ill. 571; Richards v. Lake Shore, 124 Ill. 519; Clemmer v. Drovers Nat. Bank, 157 Ill. 217; Magee v. Magee, 51 Ill. 503; Turpin v. Dennis, 139 Ill. 278; Harding v. Olson, 76 Ill. App. 483; Town of Mentz v. Cook, 108 N. Y. 508.

And where the defense of adequate remedy at law is set up before answer and overruled, by answering, the defendant waives the objection and can not renew it by amendment to his answer after evidence has been taken. Lemley v. Golden Censer Co., 16 Ill. App. 463; Kaufman v. Wiener, 169 Ill. 602; Johnson v. Miller, 50 Ill. App. 73; Black v. Miller, 173 Ill. 491; Gordon v. Reynolds, 114 Ill. 122.

JOHN E. and MAYNE POLLOCK, attorneys for appellees.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

This was a bill in chancery brought by appellant Rollin Matthewson, as executor of the will of Brockholst Matthewson, deceased, and in his own right, and Sarah F. Child, Amy Starkweather and George B. Matthewson, a minor, by Amy M. Starkweather, his next friend, against appellees, George F. Davis and Clifton H. Moore, as executors of the will of David Davis, deceased, for the purpose of enforcing an accounting for, and payment of a certain trust fund, and for general relief.

The proceeding was heard in the Circuit Court of McLean County upon the bill as amended, the answer thereto, and the report of the master, together with the testimony taken by him, and certain stipulations of the parties, and resulted in a finding and decree in favor of appellant Rollin Matthewson, as such executor, for $828.72, and requiring appellants to pay all the costs.

Appellants prosecute this appeal to reverse that decree upon the grounds that the court improperly refused to allow them interest upon the fund, and improperly required them to pay the costs.

Appellees have assigned cross-errors, and contend that the decree ought to be reversed, first, because appellants' remedy is at law and not in chancery; second, because their claim is barred by their *laches;* and third, because they ought to have probated their claim in the County Court against the estate of David Davis, deceased.

The bill was filed June 17, 1897, and as amended, alleges in effect that David Davis, on May 28, 1867, received the sum of $880 from one Goodrich, through one Vandeveer, in payment of eighty acres of land owned by one Brockholst Matthewson, and which he, by a binding contract, had sold through Davis, as his agent, to Goodrich, with the full knowledge and consent of Matthewson, who died testate in 1865, before making a deed for the land, and leaving all his property, both real and personal, to his brothers Rollin and George Matthewson, whom he named as executors of his will. That George died before the testator, leaving Rollin the only executor of the will, who qualified as such. That the co-complainants in the bill with Rollin are the owners of the share of the land (or the purchase money thereof) which George acquired under the provisions of the will of his brother Brockholst.

That when David Davis received the $880, he agreed with Rollin Matthewson, Goodrich and Vandeveer, that he would hold the same in trust for them until the title of Goodrich to the land should be perfected, and then he (Davis) would pay it to Rollin Matthewson for the estate of his deceased brother Brockholst.

Matthewson v. Davis.

That David Davis continued to hold the $880 until his death, in 1886, and while he had it, he deposited it in bank to his own account, mingled it with his own money, and used it for his own gain; that when he (Davis) died, appellees, as the executors of his will, received it and used it for their gain, and fail and refuse to account for and pay it over to appellants.

That before filing the bill, appellants have perfected the title of Goodrich to the land, and he and his grantee, Vandeveer, have released appellees and the estate of David Davis, deceased, from all claim on their part to the $880. Nevertheless, appellees refuse to account for said money and the interest thereon to appellants, or either or any of them, or to pay same with interest, as in equity and good conscience they ought. And the bill prays for an accounting by appellees to appellants for said $880, together with interest thereon from May 28, 1867, and for general relief.

Appellees demurred to the bill as originally drawn on the grounds (among others) that appellants' remedy was at law and not in equity; that appellants' claim was barred by the statute of limitations or laches of appellant in not demanding the money until thirty years after it was received by Davis, and eleven years after his death; that their claim should have been probated in the County Court of McLean County, against the estate of Davis, where it is being administered.

The demurrer having been sustained upon other grounds, and the bill being amended to obviate them, appellee, while excepting and protesting generally that they ought not to be compelled to answer same, and reserving all benefit and advantage of exception to the many errors, uncertainties, and other imperfections in the bill as amended, answered same by admitting that the title to the land remained in Brockholst Matthewson when he died, and that he sold it before his death to Goodrich through his agent, David Davis, for $800, which Vandeveer paid to Davis for Goodrich on May 28, 1867, together with $80 interest thereon.

Deny that Davis agreed to hold said money in trust, but

say it was simply left with him until the title to the land should be perfected by agreement of all the parties in interest. Deny that Davis mingled the money with his own, or used same at any time for his benefit. Say that Rollin Matthewson did not make any claim for the money from May, 1867, until the year 1886, and that they are not advised whether or not Davis has paid the money to the estate of Brockholst Matthewson, deceased, or to his heirs. Say appellees have offered and hereby offer to pay to the proper representatives or heirs of Brockholst Matthewson, deceased, as the court shall determine, the original $880, less certain taxes on the land, amounting to about $51, which was paid by Davis.

Admit the death of Davis in 1886, and say that appellants have made no claim against his estate, although more than two years have elapsed since letters of administration have been issued upon his estate.

Admit appellees are executors of the will of Davis, but deny they came into possession or have control or use of the money in question; admit that all the personal estate of Davis came into appellees' hands, but are unadvised from the papers or effects of Davis' estate that he ever held said money in trust for appellants, or held it in any capacity whatever. Say the only knowledge they have on the subject is that contained in the bank pass book of Davis, in which it appears that in May 1867, he deposited that amount of money in the First National Bank of Bloomington, Ill., with the memoranda to the effect that it was the Matthewson-Goodrich money. Deny that Davis used the money or that appellants are entitled to any interest thereon. Say the title to the land was not acceptable to the purchaser until 1896 or 1897. Admit Goodrich went into possession of the land about 1867 or earlier, since which time he and his grantees have continued thereon enjoying the rents and profits thereof, and that Vandeveer now owns it.

Admit that appellants, or some of them, executed deeds for the land to Goodrich and Vandeveer, which are satis-

factory to the grantees, but say it was recently done; admit that Goodrich and Vandeveer have released the estate of Davis and appellees from any claim on account of said fund; admit that appellants repeatedly applied to appellees for said money, with interest thereon from May 28, 1867, but say that appellants did not do so for nearly twenty years after the money is alleged to have come into Davis' hands, and not until after his death.

After appellants filed a general replication to this answer, the cause was, on February 14, 1898, referred to the master to take proofs and report same to the court, together with his findings and conclusions thereon.

On November 29, 1890, on motion of appellees, the court ordered appellants to close taking testimony by the. first day of the next term. On March 7, 1900, by leave of court, appellants amended their answer by saying that appellants, nor any of them, are not entitled to any interest on the fund in question because appellants have been guilty of laches in not sooner perfecting the title to the land in Goodrich or his grantee, and that a court of chancery ought not to take jurisdiction of the subject-matter of this cause for the reason that appellants have not, at any time, presented their claims to the County Court and had the same allowed there against the estate of David Davis, deceased.

On May 9, 1899, all the parties, by their respective counsel, stipulate in writing to the effect that Brockholst Matthewson, of Johnson, R. I., died in November, 1865; that prior to his death he owned in fee, the eighty acres of land described in the bill; that David Davis in his lifetime, as the agent of Brockholst Matthewson, and with his full knowledge and consent, entered into negotiations with one W. A. Goodrich, of Christian county, Illinois, for the sale of this land for $800; that a binding contract was made for said sale, but Brockholst Matthewson died before the deed of conveyance was executed in pursuance of said contract; that Brockholst Matthewson died testate, leaving a will, a copy of which is set out in the bill; that David Davis received $880 in payment of the land and agreed to

hold same pending the correction of the title to same; that the land was sold for $800, and $80 was added thereto for interest, which makes the $880 received; that David Davis deposited the money May 28, 1867, to his own account in the First National Bank of Bloomington, and that he or appellees have at no time since, kept a separate account of the money; that David Davis paid out of the money on account of taxes on the land for 1866, and prior years, the sum of $51.28; that George Matthewson, one of the devisees and executors named in the will of Brockholst Matthewson, deceased, died intestate in 1860, leaving surviving him the complainants in the bill, Sarah F. Child and Amy M. Stockweather, and one Mary Matthewson, who died single, intestate and without issue, in the year 1885; a son named Brockholst Matthewson, Jr., who died in 1885, intestate, leaving surviving him his son and only child, George Bertram Matthewson, the minor complainant in the bill.

That David Davis died June 26, 1886, testate, and by his will appellees were appointed executors thereof; that they have qualified as such since that time, and up to this time are the acting executors thereof.

That W. A. Goodrich went into possession of the land immediately after the execution of the contract of sale thereof between him and Brockholst Matthewson, and he (Goodrich) and his grantees have since had possession thereof, and received the rents and profits of the same; that W. A. Goodrich sold the land to one H. M. Vandeveer, who has since then died, but prior thereto conveyed the same to his son, E. A. Vandeveer, who is now the owner and has possession thereof.

The testimony taken by the master, together with the written evidence submitted by the parties to this cause, show that a short time after the death of Brockholst Matthewson, Judge David Davis commenced corresponding with Rollin Matthewson, one of the appellees, who now resides at Providence, Rhode Island, with a view of getting a deed for Goodrich and closing up the contract of sale for the land in question, the purchase price not having been paid. And in a letter to him dated February 13, 1867, said:

" The land is unoccupied and can't be protected unless a written contract is given to Mr. Goodrich, reciting the payment of money and that the deed will be made as soon as it can be done.  This you can execute by signing, sealing and acknowledging as executor of your brother's will.  *I will get the money from Goodrich and retain it until the title is perfected* when I deliver him such a contract or bond for a deed.  I have paid the taxes for many years for your brother at his request and am continuing to pay them.  Be good enough to make out such a contract and enclose it to me.  Goodrich will not hold his offer good much longer. Of course I wish to be refunded the money I have paid for taxes, but I want to get rid of the matter also.  I have kept the business in charge for your brother on account of my old business relations with him.  I can deposit the money in bank where I live to await the transmission of your deed.  This letter is written in presumption that you can not now perfect the title."

That Judge Davis' " pass book " with the First National Bank of Bloomington, Illinois, containing his personal account with that bank up to the time of his death and after that, the account of appellees as executors of his will up to January 4, 1896, shows on May 28, 1867, there was deposited to the credit of Judge Davis $880; and that opposite to that item was written therein in Judge Davis' writing the following:  " Bunn (Vandeveer) Matthewson," which words show " that the money had come from Bunn's bank at Springfield, from Vandeveer, and was about the Matthewson matter.  I found it in the spring of 1888," says appellee George P. Davis, when testifying as a witness in this case.

That May 27, 1871, Judge Davis in a letter written to Rollin Matthewson said :

" Bearing in mind the inquiry of your letter of February 16th, I proceed to answer it.  You executed, as executor of the will of your brother, on the 22d day of December. 1865, to William A. Goodrich, of Christian county in this State, a bond for a deed to the following land :  The southeast quarter of the southeast quarter of section 33, and the northwest quarter of the southwest quarter of section 34, town 13 north, range 2 west of the third P. M., in Christian county, Illinois.  Goodrich agrees to pay $800

on the delivery of a good and sufficient deed to the premises. If you will have a deed made out for the premises and sent to me, I will see that the matter is brought to a close."

And afterward, in replying to a letter from Rollin Matthewson, Judge Davis wrote him, April 20, 1886, as follows:

"Owing to my absence from home your letter of April 10th has remained unanswered until to day. I re-enclose to you my letter of May 27, 1871. The transaction had wholly escaped my memory. I will have it hunted up and advise you."

That shortly after the death of Judge Davis, in 1886, a correspondence commenced between Rollin Matthewson and appellees concerning the fund in question, which was kept up, at intervals, until this bill was filed, in all of which Rollin Matthewson urged appellees to account for and pay him the fund, and in the latter part wanted interest thereon; and appellees therein acknowledged that Judge Davis received the fund so claimed, but insisted that the title to the land had not been perfected in Goodrich, the purchaser, until 1897, after which appellees signified their willingness to pay the fund without interest and less $51.28, which it is conceded by all parties Judge Davis had paid out for taxes on the land.

The bank pass books, which contain an account of all the deposits made up to the time of his death by Judge Davis in the First National Bank of Bloomington, and that of appellees as executors of his will from the time of his death until January 3, 1896, and showing the state of that bank account at the different dates when the pass books were balanced, were in evidence, and from them it appears that the credit and over-draft balances were as follows:

|  |  |  | Cr. |
|---|---|---|---|
| July | 10, 1867 | ........................... | $ 2,774 28 |
| Sept. | 14, " | ............................ | 7,095 10 |
| Nov. | 22, " | ............................ | 4,012 50 |
| Jan. | 30, 1868 | ............................ | 649 83 |
| June | 26, " | ............................ | 2,823 62 |
| Nov. | 11, " | ............................ | 15,825 00 |

Matthewson v. Davis.

| | | | Dr. | | Cr. | |
|---|---|---|---|---|---|---|
| June | 2, 1869 | | | | $ 9,485 | 67 |
| Sept. | 22, " | | | | 42,974 | 57 |
| Oct. | 29, " | | | | 22,256 | 65 |
| Dec. | 6, " | | | | 19,909 | 90 |
| May | 12, 1870 | | | | 1,345 | 25 |
| July | 18, " | | | | 20,684 | 84 |
| Sept. | 4, " | | | | 27,359 | 46 |
| Oct. | 17, " | | | | 16,808 | 90 |
| Feb. | 9, 1871 | | | | 751 | 99 |
| May | 10, " | | | | 489 | 66 |
| June | 3, " | | | | 1,803 | 09 |
| Aug. | 7, " | | | | 15,032 | 66 |
| Aug. | 31, " | | | | 15,966 | 57 |
| Oct. | 12, " | | | | 16,234 | 64 |
| Nov. | 10, " | | | | 9,511 | 93 |
| Dec. | 27, " | | | | 4,684 | 17 |
| Mar. | 27, 1872 | | $856 | 48 | | |
| May | 15, 1872 | | | | 1,800 | 75 |
| July | 6, " | | | | 1,422 | 04 |
| Aug. | 1, " | | | | 450 | 28 |
| Sept. | 10, " | | | | 2,583 | 15 |
| Nov. | 25, " | | 4,643 | 22 | | |
| April | 18, 1879 | | | | 1,792 | 99 |
| July | 8, " | | 1,017 | 80 | | |
| Aug. | 15, " | | 366 | 38 | | |
| Nov. | 25, " | | | | 1,489 | 52 |
| Feb. | 9, 1880 | | | | 637 | 47 |
| June | 30, 1880 | | | | 217 | 13 |
| Oct. | 12, " | | 960 | 42 | | |
| Jan. | 1, 1881 | | | | 2,000 | 53 |
| May | 17, " | | | | 2,275 | 88 |
| July | 14, " | | | | 2,084 | 32 |
| Feb. | 4, 1882 | | | | 2,491 | 23 |
| Sept. | 30, " | | 838 | 65 | | |
| Jan. | 6, 1883 | | 1,891 | 22 | | |
| Mar. | 17, " | | | | 5,234 | 08 |
| July | 23, " | | 2 | 23 | | |
| Dec. | 18, " | | 1,500 | 47 | | |
| Mar. | 13, 1884 | | | | 7,346 | 56 |
| July | 12, " | | | | 13 | 06 |
| Sept. | 25, 1884 | | 1,082 | 24 | | |
| Nov. | 28, " | | 334 | 59 | | |
| Jan. | 14, 1885 | | 155 | 73 | | |

| Feb.  | 3,  | "    | .....................................$ | 4,415 | 56 |
| Mar.  | 8,  | "    | .............................. | 7,356 | 25 |
| June  | 9,  | "    | .............................. | 1,410 | 18 |
| July  | 24, | "    | .............................. | 869 | 35 |
| Oct.  | 3,  | "    | .............................. | 5,004 | 24 |
| Jan.  | 6, 1886 | .........258 61 | | | |
| Feb.  | 3,  | "    | .............................. | 2,044 | 02 |
| Mar.  | 1,  | "    | .............................. | 3,034 | 74 |
| April | 1,  | "    | .............................. | 1,496 | 17 |
| May   | 1,  | "    | .............................. | 753 | 24 |
| June  | 7,  | "    | .......1,023 47 | | | |
| Aug.  | 4,  | "    | .......2,191 27 | | | |
| Sept. | 2,  | "    | ....... 518 59 | | | |
| Nov.  | 3,  | "    | .............................. | 1,514 | 03 |
| May   | 1, 1888 | .............................. | | 9 | 38 |
| July  | 2,  | "    | .............................. | 9,039 | 37 |
| May   | 7, 1889 | .............................. | | 601 | 12 |
| June  | 1,  | "    | .............................. | 5,181 | 06 |
| Oct.  | 1, 1894 | .............................. | | 541 | 30 |
| Nov.  | 2,  | "    | .............................. | 422 | 12 |
| Jan.  | 2, 1895 | .............................. | | 660 | 19 |
| Feb.  | 1,  | "    | .............................. | 1,218 | 89 |
| Jan.  | 3, 1896 | .............................. | | 1,040 | 06 |

The right hand column of figures representing the credit balances and the left hand column representing the overdrafts.

And George P. Davis testifies that his father (David Davis) "died June 26, 1887, and after that the account at the bank was carried on in his name by the executors. On January 3, 1896, the balance is $1,040.06. The business had been substantially closed up and the money divided before that time. This amount was left in the bank to pay this claim, and is there now."

The evidence also shows that the bank would have paid Judge Davis' check for $880 at any time during the time his account was kept there and up to the time of his death, whether he had money on hand in the bank or not; and that there has been no time since the death of Judge Davis that a check of the executors of his will or either of them, would not have been paid by the bank for that amount whether they had the money to pay same to their credit or not.

The master reported that he found the court had juris-
diction of the parties, the subject-matter in controversy, and
that the equities were with the appellants; that the facts
were as stipulated by the parties, as admitted in the answer,
and as shown by the evidence as above stated; and he
recommended that a decree be entered by the court requir-
ing appellees to pay appellants $1,148.72 (being the trust
fund of $880 less $51.28 paid for taxes, with six per cent
interest per annum upon $828.72 for six years, five months
and five days). The time for which he computed such
interest being ascertained by calculating the time which
Judge Davis or appellees did not have the amount of the
fund to their credit in the bank, as shown by the pass books.

Both sides urged at the proper times such exceptions to
the master's report as will entitle them respectively to urge
in this court, that the decree of the trial court ought to be
reversed for the reasons urged, in so far as such excepting
is necessary for that purpose.

We will first consider whether appellees ought to be per-
mitted to insist in this court (as they do) that the decree
ought to be reversed for want of jurisdiction in the trial
court over the subject-matter involved in this case, for the
reasons (1) that appellants' remedy is at law instead of in
equity, and (2) that appellants have not probated their
claim against the estate of Davis, deceased, in the County
Court.

We are clearly of opinion they ought not, and for two
reasons: first, because appellees in their answer expressly
offered to submit the controversy in the case at bar to the
trial court, a court of chancery, and afterward in that court
stipulated what most of the facts involved were, submitted
to that court evidence, and after a trial, procured a decree
in accordance with the offer made in their answer, and in
accordance with the offer made to this court by their coun-
sel, at page five of their printed brief and argument, where
they say:

"The executors (appellees) have always been willing and
renew their offer in this court, to pay the amount of money
received by Judge Davis, less the taxes."

The claim in question is not one of a nature wholly without the jurisdiction of a court of equity, but on the contrary, one in which such court has jurisdiction (Weaver v. Fischer, 110 Ill. 147) as well as a court of law or the County Court.

And second, because appellants, by such answers, submission and trial, have waived all objection to the jurisdiction of the trial court merely on account of appellants having an adequate remedy at law. Stout v. Cook, 41 Ill. 447; Gage v. Griffin, 103 Ill. 44; Richards v. L. S. & M. S. Ry. Co., 124 Ill. 519; Turpin v. Dennis, 139 Ill. 278; Crawford v. Schmitz, Id. p. 571; and Kaufman v. Weiner, 169 Ill. 602.

Appellees further insist that the decree ought to be reversed because under the facts in this case, appellants' claim against them is barred by the laches of appellants. But we think a complete answer to this insistence is, that appellees, as executors of the will of Judge Davis, deceased, came into possession of the fund, and are charged with the same duties in respect thereto, as were imposed upon him; and as he held it under an express trust, so do they; and as trustees thereof under such a trust, they will not be permitted to invoke the doctrine of laches or the statute of limitations against their *cestui que trust* in the absence of any repudiation of the trust by them or their testator. Albretch v. Wolf, 58 Ill. 186; Walden v. Karr, 88 Ill. 49; Smith v. Ramsey, 6 Ill. 393; C. & E. I. R. R. Co. v. Hay, 119 Ill. 493; Ellis v. Ward, 137 Ill. 509; and Pomeroy on Specific Per. of Contracts, Sec. 404.

That Judge Davis held the fund in question in trust, as above stated, and that neither he nor appellees have ever repudiated so holding it, is positively shown by the record in this case, for it conclusively so appears from the letters written by Judge Davis to Rollin Matthewson, as well as those written to him by appellees after Judge Davis' death, and by the pleadings and stipulations of the parties.

Appellants contend that they are entitled not only to the fund which Judge Davis and appellees received and hold in trust for them, but also interest thereon from May 28,

1867, up to the time of the trial; for the reason that it appears that Judge Davis on that date deposited the fund in bank to his individual credit, mingled it with his own, and he and appellees afterward used it to their profits; while appellees insist that they ought not to be charged with interest upon the fund under the circumstances, because by the agreement under which it was received and held, neither Judge Davis in his lifetime, nor they after his death, ought to have paid over the money before the title to the land was perfected in Goodrich or in Vandeveer, his grantee, and that such title was not so perfected until just before the bill was filed, and this raises the important question in the case.

The rule that " trustees and others standing in a fiduciary and confidential relation will not be permitted to deal on their own account, with the person or thing falling within that trust relationship," is one of wide application in equity, and one whose enforcement courts of equity uniformly require, is well established. And the principle involved in that rule has been applied not only to those who are strictly trustees, such as assignees, commissioners, solicitors of bankrupts, executors, administrators, guardians, agents, officers of the court, but as well to all others in whom there is a trust or confidence reposed which would or might bring in conflict the interest of the trustee and the *cestui que trust;* and this rule was referred to and applied in Thorp v. McCullum, 1 Gilm. 625, where an administratrix bought property of her intestate's estate at her own sale; also in Dennis v. McCagg, 32 Ill. 445, where one assuming to act as agent without authority, acquired in that way property belonging to his principal; and in Miles v. Wheeler, 43 Ill. 126, where an administrator bought property in his charge through a third person, the Thorp case was cited and the principle therein announced, was approved; in Lehmann v. Rothbarth, 111 Ill. 200, where the husband of an administratrix used funds of the estate which his wife had in charge, in his private business, and the court held he was the trustee of the estate as respects such funds, and charged him with interest thereon; and in Weaver v. Fischer, 110 Ill. 146, where

an agent was held to be trustee for his principal, and the agent was required to turn over the property of his principal which the agent had converted to his own use.

And it is a rule likewise of uniform application, that trustees and other fiduciaries must abstain from dealing on their own account, with trust property, or from making any profit out of it for themselves; and if they do, that they must account for the profits made therewith (Weaver v. Fischer, *supra*), if they can be ascertained, and if not, then with interest upon the trust property or fund used; and if they fail to keep an account of the same while using it, in the absence of proof to the contrary, it will be presumed that annual interest on the sum used at least has been made, which ought to go to the *cestui que trust*. Ogden v. Larrabee, 57 Ill. 398 (409); Manning v. Manning, 1 Johns. Ch. 527; Asay v. Allen, 124 Ill. 391; Utica Ins. Co. v. Lynch, 11 Paige 524, and Kerr v. Laird, 27 Miss. 544.

In the case at bar, Judge Davis deposited the fund to his individual account, and by a memoranda written by him in his pass book, he designated it by an ear mark so it could be followed. That account has been continued in that bank by appellees, as executors of his will, ever since his death, and the account shows that the fund has been kept there intact ever since it was so deposited, with the exception of about six years, five months and seven days of that time, when it was used by him before, and by appellees after his death, for which time we think appellees should be required to pay simple interest. 1 Perry on Trusts, Sec. 468; Lehmann v. Rathbarth, 111 Ill. 200; Cool v. Jackman, 13 Ill. App. 560; Whitney v. Peddicord, 63 Ill. 249; Sholty v. Sholty, 140 Ill. 81; Utica Ins. Co. v. Lynch, 11 Paige, 520; Manning v. Manning, 1 Johnson's Ch. 527; Dunscomb v. Dunscomb, Ibid. 508; Mumford v. Murray, 6 Johnson's Ch. 1; Carniss v. Gardiner, 1 Edwards' Ch. 128; McCloskey v. Gleason, 56 Vt. 264; Payton v. Smith, 2 Dev. & Batt. Eq. (N. C.) 325; Jameson v. Shelby, 2 Hump. (Tenn.) 198; Dyott's Estate, 2 W. & S. (Pa.) 557; Kerr v. Laird, 27 Miss. 544; Wistar's Appeal, 54 Penn. St. 60; Hess' Estate, 68 Penn. St. 454, and In re estate of Davis, 62 Mo. 450.

In arriving at the time the fund was used, and for which interest thereon should be charged, we have adopted the method employed by the master in chancery when this case was before him for that purpose, which is to take the dates when the balance of the account in bank as shown by the bank pass books indicate that Judge Davis or appellees did not have the amount of the trust fund to his or their credit in bank, and have assumed that such deficit continued until the next balance showed there was sufficient, because we think it does equity to the parties under all the circumstances, and is similar to that resorted to for such purpose in Lehman v. Rothbarth, 111 Ill. 200.

We are therefore constrained to conclude that the learned chancellor who rendered the decree appealed from, erred when he declined to follow the recommendation made by the master to enter a decree in favor of appellants for $1,148.72, which included $320 interest upon the fund while it was used, at the rate of six per cent per annum, and improperly entered a decree for only $828.72 (the original amount of the fund received, less $51.28 paid for taxes on the land).

All the costs were also improperly taxed to appellants, when appellees should have been required to pay most of them.

For the two errors above pointed out, we will order the decree of the Circuit Court herein to be reversed, and the case remanded to that court with directions to enter a decree in favor of appellant Rollin Matthewson, as executor of the will of Brockholst Matthewson, deceased, for the sum recommended by the master, with additional interest of six per cent per annum on $828.72, from the date the master's report was filed, until the decree directed by the order of this court is entered; and to tax all the costs to appellees, except such as were made by reason of the improper joinder of the other complainants with Rollin Matthewson, executor of the will of Brockholst Matthewson, deceased, who alone can maintain this proceeding.

Decree reversed and cause remanded with directions.